IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:17-CV-83-FL

| | | |
|---|---|---|
| MICHAEL HUNT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 19, 27). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court adopts the M&R as its own, grants defendant's motion, denies plaintiff's motion, and affirms defendant's final decision.

## BACKGROUND

On April 30, 2012, plaintiff protectively filed an application for supplemental security income payments, alleging disability beginning April 4, 2008. The application was denied initially and upon reconsideration. Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), who, after a October 22, 2014, hearing, denied plaintiff's claims by decision entered

August 26, 2015.[1]  Following the ALJ's denial of his application, plaintiff timely filed a request for review, and the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as defendant's final decision.  Plaintiff then filed a complaint in this court on May 11, 2017, seeking review of defendant's decision.

## COURT'S DISCUSSION

A.    Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's.  Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,"  including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).  An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build

---

[1] At hearing, plaintiff moved to amend his alleged onset date of disability to January 3, 2014, which the ALJ granted.  (Tr. at 12).

an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of January 3, 2014. At step two, the ALJ found that plaintiff had the following severe impairments: history of fracture of the left femur and ankle, depression, and personality disorder. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform work at the medium exertional level with the following limitations: work does not include the preparation or serving of food consumed by others; understand, remember, and perform work tasks at GED Reasoning Level 03; perform goal-oriented rather than production-oriented work (e.g., the performance of work tasks in allotted time is more important that the pace at which the work tasks are performed); perform work in which independent goal setting or planning occurs no more than frequently; perform work that involves routine tasks (i.e., no more than frequent changes in core work duties); can have frequent contact with the general public.

At step four, the ALJ concluded plaintiff had no past relevant work, but in considering plaintiff's age, education, work experience, and RFC, determined there are jobs that exist in

4

significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.   Analysis

Plaintiff challenges the magistrate judge's findings that substantial evidence supports the ALJ's 1) evaluation of plaintiff's symptoms and impairments; 2) determination of plaintiff's RFC; 3) evaluation of plaintiff's credibility; and 4) formulation of hypothetical questions to the vocational expert ("VE"). The court will address each argument in turn below.

   1.   Evaluation of Plaintiff's Symptoms and Impairments

At the second step of the sequential evaluation process, the ALJ must examine the claimant's alleged impairments to determine which, if any, of them are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The regulations provide that an impairment, or combination of impairments, is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment of combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984). If the ALJ determines that the claimant does not have a severe impairment or combination of impairments, a finding of not disabled is made at step two, and the sequential process comes to an end. On the other hand, if the claimant has at least one impairment that is deemed severe, the process moves on to the third step.

Here, as stated above, the ALJ determined plaintiff had severe impairments of a history of fracture of the left femur and ankle, depression, and personality disorder and also determined plaintiff's HIV and substance addiction disorders to be non-severe impairments. (Tr. at 14-15).

Plaintiff argues that the ALJ erred by not finding these latter impairments severe, inconsistent with the state agency non-examining physician's determination. (DE 32 at 4 (citing Tr. at 71, 85)).[2] The court disagrees.

The ALJ's findings are supported by substantial evidence. Regarding plaintiff's HIV, the ALJ provided a thorough assessment of why the record does not support a finding that plaintiff's HIV is severe:

> The claimant's HIV+ is not characterized by laboratory tests indicating bacterial infections, such as nocardiosis or salmonella bacteremia, recurrent non-typhoid, or fungal infections, such as aspergillosis or mucormycosis, or protozoan or helminthic infections, such as strongyloidiasis, extra-intestinal or toxoplasmosis of an organ other than the liver, spleen, or lymph nodes, or viral infections, such as cytomegalovirus disease at a site other than the liver, spleen, or lymph nodes or progressive multifocal leukoencephalopathy, or malignant neoplasms, such as Kaposi's sarcoma or Lymphoma, or conditions of the skin or mucous membranes with exiensive fi.mgating or ulcerating lesions not responding to treatment, or HIV wasting syndrome, or diarrhea, lasting for 1 month or longer, resistant to treatment, and requiring intravenous hydration, intravenous alimentation, or tube feeding, or infections, such as sepsis, meningitis, or endocarditis which are resistant to treatment or require hospitalization or intravenous treatment three or more times in a 12-month period, or repeated (as defined in 14.0013) manifestations of HIV infection, including those listed in 14.08AJ, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.081), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level: limitation of activities of daily living; limitation in maintaining social functioning; or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace as required by Section 14.08 of the Medical Listing of Impairments. The laboratory test results received posthearing (Ex. 15F) reflect the claimant's CD4 was 353 and marked as low; however, because it is higher than 200, it is not depressed.

---

[2] Although plaintiff argued generally in his motion for judgment on the pleadings that the ALJ erred by not properly evaluating plaintiff's symptoms and impairments, plaintiff did not make this specific argument, (see DE 26 at 18), and thus the magistrate judge did not address this argument, (see DE 29 at 5).

(Tr. at 15). Additionally, although both state agency non-examining physicians determined plaintiff's HIV to be severe, both additionally stated there is "no indication of active HIV issues." (Id. at 74, 88). Therefore, the ALJ properly determined plaintiff's HIV is a non-severe impairment and properly considered plaintiff's functional limitations from plaintiff's HIV "throughout the remainder of the sequential evaluation." (Id. at 15; see also id. at 24 ("The latter also addresses the fatigue, as reported in claimant testimony, connected with HIV+. . . . The work nature also reflects the effect of moderate persistence and the general fatigue of being HIV+, allowing the claimant more discretion in selecting his work pace.").

Regarding plaintiff's substance addiction disorders, plaintiff represented to the ALJ that he had been through "detoxification and rehabilitation and has been sober since January 3, 2014," which is also the date of plaintiff's amended alleged onset of disability. (Id. at 15-16). Therefore, substantial evidence supports the ALJ's conclusion that plaintiff's "poly-substance use is in early remission, is non-severe, and that it is a non-material factor in making this decision." (Id. at 16).[3]

In sum, substantial evidence supports the ALJ's evaluation of plaintiff's symptoms and impairments at the second step of the sequential evaluation process.

2. RFC Determination

An ALJ's RFC assessment must "identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (citation omitted). The Fourth

---

[3] Plaintiff also incorrectly asserts that the ALJ did not find plaintiff's affective disorder severe, inconsistent with the state agency non-examining physician's determination. (DE 32 at 4). However, the ALJ found plaintiff's depression and personality disorder to be severe and, at step three, assessed whether plaintiff's impairments or combinations of impairments meets or medically equals the severity of one of the listed impairments, as relevant here, listings 12.04, affective disorders, and 12.08, personality orders, the same listings assessed by the state agency non-examining physicians and determined to be severe. (See Tr. at 16, 85).

7

Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Id. However, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (citation omitted).

Plaintiff does not make a specific objection to the magistrate judge's recommendation regarding the ALJ's RFC determination. Instead, plaintiff argues verbatim the same arguments made in his motion for judgment on the pleadings concerning allegations that the ALJ erred by failing "to consider or even acknowledge all of Claimant's symptoms and limitations," specifically his cirrhosis of the liver, skin rash, [gastroesophageal reflux disease ("GERD")], Hepatitis C, pain, fatigue, memory loss, muscle stiffness, and inability to sleep," (compare DE 26 at 18-19 with DE 32 at 4-5), and additionally argues in general terms that "the ALJ failed to conduct a function-by-function analysis . . . [and] erred in not considering all of Claimant's impairments," (see DE 32 at 5-6).

First, regarding plaintiff's hepatitis C and GERD, the ALJ discussed both at step two, stating: "The medical evidence of record does not reflect any significant ongoing clinical findings or functional impairments related to the GERD or Hepatitis C and the claimant testified that he does not know of any resulting symptoms that affect his functionality." (Tr. at 15). Therefore, the ALJ determined these ailments "to be non-severe impairments causing minimal, if any limitations in his ability to perform basic work related activities." (Id.).

The ALJ then discussed in the RFC section plaintiff's symptoms of skin rash, pain, muscle stiffness, and fatigue as they relate to his HIV and Hepatitis C, as thoroughly reviewed by the

8

magistrate judge. (See DE 29 at 7-10). Of significance, plaintiff points to no evidence in the record overlooked by the ALJ supporting plaintiff's arguments that these ailments and symptoms limit plaintiff's functional ability beyond that which was found by the ALJ. As stated by the magistrate judge, the medical records cited by plaintiff in his argument were likewise cited by the ALJ in his decision with respect to cirrhosis of the liver, skin rash, GERD, Hepatitis C, pain, fatigue, memory loss, muscle stiffness, and inability to sleep. (DE 29 at 9 (citing DE 26 at 18)). Finally, as stated above, the ALJ explained that he specifically accounted for plaintiff's fatigue in the RFC. (See Tr. at 24).

Here, the ALJ properly assessed plaintiff's impairments, and there is sufficient evidence to support the RFC. Plaintiff points to no contrary evidence in the record that the ALJ did not consider; therefore, the court adopts the magistrate judge's recommendation that plaintiff's argument that the ALJ erred by not properly considering his impairments and by not conducting a proper function-by-function analysis is unfounded, and the court finds the ALJ's RFC determination supported by substantial evidence.[4]

3. Credibility Evaluation

The ALJ must follow "a two-step analysis when considering a [plaintiff's] subjective statements about impairments and symptoms," first turning to "objective medical evidence showing

---

[4] Plaintiff argues with no support that the "ALJ improperly gave significant or more weight to the non-examining medical source evidence from the State agency consultants." (DE 32 at 5). Presumably plaintiff is referencing the significant weight the ALJ afforded to Dr. Jack Drummond, who determined plaintiff could perform medium work activity, and Dr. Bonny Gregory, who determined plaintiff was capable of performing simple, routing, repetitive tasks in a low stress and low social work environment. (Tr. at 23-24). The ALJ stated that "[g]enerally, such opinions are entitled to considerable deference when they are supported by the record" and that in this case "[t]he record shows that the doctors fully considered the available evidence and provided an insightful analysis and rationale for the conclusions." (Id. at 24). Because plaintiff offers no further argument or evidence in support of plaintiff's argument that the ALJ improperly gave significant weight to these opinions and because the court discerns no error, the court finds this argument without merit.

a condition that could reasonably produce the alleged symptoms," and then evaluating the "intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which they limit the [plaintiff's] ability to perform basic work activities." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (citations omitted). "The second determination requires the ALJ to assess the credibility of the plaintiff's statements about symptoms and their functional effects." Id.

Here, the ALJ followed this process, and the court finds that substantial evidence supports the ALJ's conclusion that plaintiff's statements throughout the record, both documentary and oral, as "partially credible." (Tr. at 19).[5]

The ALJ's decision summarized plaintiff's subjective complaints and his testimony regarding how his impairments affect his daily life. (Tr. at 18-19). Specifically, the ALJ noted plaintiff's testimony that "the number one reason he is unable to work is fatigue and nausea" and "[h]e stays tired and has no energy." (Id. at 18). Plaintiff attributed his fatigue to a low CD4 count. (Id.). The ALJ then found that plaintiff was partially credible, and offered two reasons for his assessment: plaintiff's statements of his "limited daily activities cannot be objectively verified with any reasonable degree of certainty," and even if he were so limited, "it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons[.]" (Id. at 19).

Although somewhat unclear, it appears plaintiff argues that his alleged limitations based on fatigue and nausea were supported by the record and that "several other limitations and restrictions" are found in the record 'that neither the ALJ nor Magistrate Judge considered." (DE 32 at 9).

---

[5] Plaintiff asserts without further explanation or support that the "ALJ's credibility assessment violates [Mascio] by determining the claimant's RFC before determining credibility." (DE 32 at 7). A review of the ALJ's order shows plaintiff's argument to be without merit.

10

Here, plaintiff specifically attributed his inability to work to nausea and fatigue. (Tr. at 39). With regard to nausea, the ALJ noted from plaintiff's testimony that he had not discussed this symptom with his treating physician (id. at 18), and the cited records in the RFC discussion demonstrate that plaintiff consistently denied nausea at the medical appointments spanning from February 5, 2013, through August 28, 2014, (id. at 20-21). With regard to fatigue, as stated above, the ALJ specifically considered fatigue when formulating the RFC, stating that limitations in task complexity and productivity "addresses the fatigue, as reported in claimant['s] testimony, connected with HIV+," "the limitation provided is commensurate with the medical evidence," and "[t]he work nature also reflects the effect of moderate persistence and the general fatigue of being HIV+, allowing the claimant more discretion in selecting his work pace." (Id. at 24).[6]

Regarding the "several other limitations and restrictions" allegedly found in the record 'that neither the ALJ nor Magistrate Judge considered," (DE 32 at 9), plaintiff cites to no particular section of the record in support of this contention. To the extent plaintiff is referencing plaintiff's previously asserted argument, that the ALJ erred by failing "to consider or even acknowledge all of Claimant's symptoms and limitations," specifically his cirrhosis of the liver, skin rash, [gastroesophageal reflux disease ("GERD")], Hepatitis C, pain, fatigue, memory loss, muscle stiffness, and inability to sleep," (id. at 4-5), the court has addressed that argument above, finding that the ALJ properly assessed plaintiff's impairments, and there is sufficient evidence to support the RFC. Here again, plaintiff has made no argument nor offered any evidence that these additional "limitations and restrictions" impact plaintiff's functional capabilities. Therefore, the court finds

---

[6] To the extent plaintiff argues that the ALJ erred in failing to explain alleged inconsistency between the ALJ's credibility determination and certain of plaintiff's doctors determinations that some of plaintiff's statements were credible, (see DE 32 at 8), no inconstancy exists, (see Tr. at 73 (finding credible plaintiff's allegations of being HIV+, sustaining an injury and healing from those injuries, being depressed); id. at 86-87 (same)).

11

sufficient evidence to support the ALJ's credibility determination regarding these "limitations and restrictions."[7]

The court may not reweigh this evidence, make credibility determinations, or supplant the ALJ's judgment with the court's own. Johnson, 434 F.3d at 653. Accordingly, viewing the record as a whole, the court concludes that substantial evidence supports the ALJ's credibility determination.

4.  Formulation of Hypothetical Questions Posed to VE

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989); see also 20 C.F.R. §§ 404.1566(e), 416.966(e). In order for a vocational expert's opinion to be relevant or helpful, "it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker, 889 F.2d at 50. "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." Pratt v. Sullivan, 956 F.2d 830, 836 (8th Cir.1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. See Johnson v. Barnhart, 434 F.3d 650,

---

[7] It appears that plaintiff additionally objects that the magistrate judge found Thomas V. Berryhill, No. 4:16-CV-00015-D, 2017 WL 1047253, at *10 (E.D.N.C. Feb. 15, 2017), "materially distinguishable from the instant case." (DE 32 at 8). In both this case and in Thomas, the ALJs used similar language in making a credibility assessment. See Thomas, 2017 WL 1047253, at *10 ("ALJ Ziercher found that Thomas was partially credible. ALJ Ziercher offered two reasons for his assessment: (1) Thomas's statements of her 'limited daily activities cannot be objectively verified with any reasonable degree of certainty' and (2) even if she were so limited, 'it is difficult to attribute that degree of limitation to the claimant's medical conditions, as opposed to other reasons'"). However, as the court made clear in Thomas, "[l]anguage such as that ALJ Ziercher uses does not require remand where the reasons for the credibility determination are otherwise adequately explained," id., and here, unlike in Thomas, the ALJ's credibility determination is adequately explained.

659 (4th Cir.2005) (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ).

Plaintiff appears to argue that the magistrate judge erred by finding substantial evidence supports the ALJ's determination that plaintiff was restricted only by those limitations reflected in the RFC. In support, plaintiff argues that the limitations reported by Bonny Gregory, MD, David Johnson, MA, Julius M. Brannon, Ph.D., and Dr. Ferris Locklear should have been included in the ALJ's hypothetical questions to the VE. (See DE 32 at 10).[8]

At its root, this is not an argument concerning the hypothetical questions posed by the ALJ to the VE but an argument about whether the ALJ properly determined plaintiff's RFC. As stated above, the court finds that substantial evidence supports the ALJ's RFC determination.

---

[8] Plaintiff alleges these doctors reported the following limitations not accounted for in the hypothetical questions posed to the VE:

> moderate limitations in his ability to (a) to carry out detailed introductions; (b) to maintain attention and concentration for an extended period; (c) to complete a normal work day and week without interruptions from psychologically based symptoms and to perform at a consistent pace, without an unreasonable number and length of rest periods; that he could only maintain attention and concentration for two (2) hours (as oppose to four hour found by the ALJ without supporting medical evidence); (d) to interact with the general public; (e) to respond appropriately to change in work setting; (f) to set realistic goals or make plans independently of others . . . . lack[ of] insight; poor judgment; difficulty adjusting adequately in a job setting; his personality and lack of motivation adversely affects his ability to find and keep a job; a GAF of 60-70; social isolation; polysubstance dependence; and personality disorder . . . . Stage III HIV, chronic left hip and left ankle pain and able to walk short distance.

(DE 32 at 10 (emphasis added)). The court notes that many of the above limitations are included in plaintiff's RFC and included in hypothetical questions posed to the VE. As stated by the ALJ:

> The claimant's moderate limitations in concentration, persistence, and pace, inform the limitations in task complexity and productivity. The latter also addresses the fatigue, as reported in claimant testimony, connected with HIV+. This is subjective and the limitation provided is commensurate with the medical evidence. The work nature also reflects the effect of moderate persistence and the general fatigue of being HIV+, allowing the claimant more discretion in selecting his work pace. Moderate limitations in adaptation are also accounted for in the nature of tasks and their recurrence. Moderate social functioning is accommodated. Further limitations are not supported due to the lack of mental health therapy notes or other relevant objective medical evidence.

(Tr. at 24).

Additionally, an independent review of the hypothetical questions posed by the ALJ to the VE demonstrate the questions "fairly set out all of claimant's impairments"; indeed the questions posed by the ALJ included verbatim all limitations found in plaintiff's RFC. (See Tr. at 17, 58, 60-61); see also Walker, 889 F.2d at 50; Johnson, 434 F.3d at 659.[9]

## CONCLUSION

Based on the foregoing, the court ADOPTS the recommendation in the M&R. Plaintiff's motion for judgment on the pleadings (DE 19) is DENIED, and defendant's motion for judgment on the pleadings (DE 27) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED this the 30th day of July, 2018.

LOUISE W. FLANAGAN
United States District Judge

---

[9] Plaintiff additionally alleges the ALJ erred by posing hypothetical question to the VE that did not include plaintiff's age, education, or work experience. However, as stated by the magistrate judge and not challenged by plaintiff, the ALJ did include a limitation with respect to plaintiff's education, limiting the VE's hypothetical to "a person with a limited education" who "can understand, remember, and perform work tasks at GED reasoning level 3." (See Tr. at 58). Additionally, although the ALJ did not include plaintiff's age and work experience in the hypothetical, any error is harmless in that plaintiff's age bracket was "younger individual age 18-49" on the date he filed his application, and he had no past relevant work. (Id. at 25). Therefore, his age and his work experience would have no further limiting effect on the existence of jobs in the national economy that plaintiff could perform. See Strickland v. Berryhill, No. 7:16-CV-252-FL, 2017 WL 3910436, at *11 (E.D.N.C. Aug. 21, 2017) (finding harmless error where the ALJ failed to include the claimant's age in the hypothetical and the claimant failed to allege how her age would preclude her from performing any of the jobs identified at step five).